364 So.2d 1020 (1978)
CITY OF NEW ORLEANS and Department of Safety and Permits, Through its Director, Edward C. Kurtz
v.
The STATE of Louisiana, the Louisiana Department of Corrections Board of Corrections, and C. Paul Phelps, Director of Corrections.
No. 62214.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied December 14, 1978.
*1021 William J. Guste, Jr., Atty. Gen., Donald B. Ensenat, Asst. Atty. Gen., Ronald C. Davis, Staff Atty., New Orleans, for defendants-applicants.
Donald A. Hoffman, City Atty., Thomas P. Anzelmo, Sr., Asst. City Atty., for plaintiffs-respondents.
SANDERS, Chief Justice.
In this action to enforce its zoning ordinances, the City of New Orleans seeks to enjoin the State of Louisiana from using Jackson Barracks as a prison for the housing and/or treatment of convicted criminals, and from transferring convicted felons under the control of the Department of Corrections to the state-owned facility located at Jackson Barracks. The State filed peremptory exceptions raising prescription and its governmental function in the district court. The district court overruled defendants' governmental exception; the Court of Appeal denied writs. Subsequently, the district court sustained the peremptory exception of prescription, and the City appealed. The Court of Appeal reversed the district court's decision, which had sustained the exception of prescription, and remanded for a trial on the merits. 357 So.2d 81 (1978). On application of the State, we granted writs to review the proceedings below. La., 359 So.2d 208 (1978).
The Louisiana Department of Corrections has operated a work release program at Jackson Barracks, a state-owned facility in the City of New Orleans, since 1969. The program was established to provide transitional employment for state prisoners who would soon be eligible for parole. Under the municipal zoning ordinance, Jackson Barracks is located in an area zoned as Two-Family Residential. Although the municipal authorities were aware of the program, they brought no action to enforce the zoning ordinance.
In 1976, the Department of Corrections instituted a special medical unit for mentally disturbed prisoners at Jackson Barracks. *1022 The unit was designed to provide medical treatment for prisoners previously incarcerated at the State Penitentiary. The City of New Orleans then brought this suit to enforce its zoning ordinance.
Two threshold questions are presented for our review:
(1) Is the controversy moot because of legislative action?
(2) May a city, through its zoning ordinances, restrict the State's use of state-owned property in performing a governmental function within a zoned area?
In its brief to this Court, the City asserts that this action is now moot because of the Legislature's enactment of Act No. 700 of 1977 (LSA-R.S. 15:893.1). The statute prohibits the assignment of ten classes of prisoners to Jackson Barracks, thus restricting the use of the facility to low-risk prisoners. LSA-R.S. 15:893.1A(7) specifically prohibits the assignment to Jackson Barracks of "persons who are currently under and/or who have demonstrated a need for extensive and/or intensive medical treatment."
The statute resolves the most pressing controversy, that of the Special Medical Unit, which served as a catalyst for the present suit. In its petition, however, the City seeks additional relief. The City prays that the defendants be enjoined from:
" . . . converting, renovating, operating or using the property located at Jackson Barracks, New Orleans, Louisiana, as a prison for the housing and/or treatment of convicted criminals and from transferring convicted felons under the control of the Department of Corrections of the State of Louisiana to the state-owned facility located at Jackson Barracks, New Orleans, Louisiana. . ."
Further, the City prays for judgment: " . . . decreeing the above described acts [use of Jackson Barracks as a prison] of the defendants to be injurious to plaintiffs and a violation of the Home Rule Power of the City of New Orleans and the Zoning Ordinance of the City of New Orleans. . . ."
As we view the petition, the City seeks to broadly restrain the State from using its property as a correctional unit. Hence, we conclude that the action is still viable.
The question of whether the City can restrict the State's governmental use of state-owned property by a zoning ordinance requires an analysis of the police power.
It is settled that: (1) zoning ordinances are the exercise of the State's police power; and (2) police power denotes the State's authority to impose restraints on private rights which are necessary for the general welfare of its citizens. City of Lake Charles v. Wallace, 247 La. 285, 170 So.2d 654 (1964); Louisiana Gas Service Company v. Louisiana Public Service Commission, 245 La. 1029, 162 So.2d 555 (1964); Michell v. Louisiana State Board of Optometry Examiners, 245 La. 1, 156 So.2d 457 (1963), appeal dismissed, 377 U.S. 128, 84 S.Ct. 1180, 12 L.Ed.2d 185; Plebst v. Barnwell Drilling Company, 243 La. 874, 148 So.2d 584 (1963); Civello v. City of New Orleans, 154 La. 271, 97 So. 440 (1923); Union Ice & Coal Company v. Town of Ruston, 135 La. 898, 66 So. 262 (1914); 82 Am.Jur.2d, Zoning and Planning, § 5, p. 390.
Article 6, Section 17 of the Louisiana Constitution (1974), grants zoning authority to local governmental subdivisions:
"Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained."
This constitutional grant, however, does not abridge the State's police power. Article 6, Section 9(B) of the Louisiana Constitution of 1974 provides that: "Notwithstanding *1023 any provision of this Article, the police power of the state shall never be abridge." [1] See Plebst v. Barnwell Drilling Company, supra; State v. City of New Orleans, 151 La. 24, 91 So. 533 (1922).
The constitutional provision has been implemented by state statute. LSA-R.S. 33:4722 grants to municipalities the power to adopt regulations for land use and zoning. LSA-R.S. 33:4728 authorizes the municipalities to seek injunctive relief for zoning violations.
Article 6, Section 9(B) of the Constitution removes any doubt as to the effect of the statutory and constitutional provisions: they do not abridge the police power of the State. That power necessarily remains dominant. The municipal police power is subordinate to that retained by the State as sovereign. Hence, municipal zoning ordinances cannot control the State's use of its property in performing a governmental function. Our views comport not only with the clear provisions of the constitution, but also with the views voiced by the delegates to the Louisiana Constitutional Convention prior to adopting the provisions discussed herein. State of Louisiana Constitutional Convention of 1973, Verbatim Transcripts, Vol. 38, Proceedings, 117th day, pp. 15-17; Vol. 19, Proceedings, 58th day, pp. 41-42.
While the law and jurisprudence of other states is not controlling, our research shows that our conclusion harmonizes with the majority rule throughout the country. City of Medford v. Marinucci Bros., 344 Mass. 50, 181 N.E.2d 584 (1967); Board of Regents of the Universities and State College of Arizona v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (1960); Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So.2d 911 (1959); Nehrbass v. Incorporated Village of Lloyd Harbor, 2 N.Y.2d 190, 159 N.Y.S.2d 145, 140 N.E.2d 241 (1957); City of Charleston v. Southeastern Construction Co., 134 W.Va. 666, 64 S.E.2d 676 (1950); Peters v. N. Y. State Urban Development Corp., 41 A.D.2d 1008, 344 N.Y.S.2d 151 (1973); Paulus v. City of St. Louis, 446 S.W.2d 144 (St. Louis Court of App., Mo. 1972); AIA Mobile Home Park, Inc. v. Brevard County, 246 So.2d 126 (Fla.Dist.Ct. of App.1971): Annotation, 61 A.L.R.2d 970, § 1 et seq.; 82 Am.Jur.2d Zoning & Planning, §§ 150-151, pp. 633, 635; Rhyne, Municipal Law, § 12-8, pp. 306-307 (1957); McQuillin, Municipal Corporations, Zoning, § 25.15 (3rd Ed.Rev.1976), pp. 37-38; Miller, "Zoning and the State's Primary Police Power to Use Its Property in Performing Governmental Functions," 3 So.L.Rev. 133 (1977).
We hold that the State's peremptory exception raising its governmental function is well-founded. In so holding, we do not reach the prescriptive issue, reurged in this Court.
For the reasons assigned, the judgment of the district court is reversed; the peremptory exception is sustained; and the suit is dismissed at plaintiff's costs.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents.
MARCUS, Justice (dissenting).
I agree that enactment of Act 700 of 1977 substantially, if not entirely, moots the issues raised in this case. In any event, however, I do not agree that the state of Louisiana and its many agencies are in all cases immune from municipal zoning regulations when exercising governmental functions, especially in view of the fact that in Louisiana the power of municipalities to zone is constitutionally, and not merely statutorily, derived. Mechanical application of an arbitrary rule in favor of the state could lead to inequitable results in some instances. Although the state has a legitimate interest in performing its public function, I do not believe that this interest will always justify violations of local zoning laws. Such violations infringe upon the interests and expectations of adjoining landowners in the continuous enforcement of the existing zoning ordinance. Moreover, they infringe upon a *1024 municipality's interest in the maintenance of its land use allocation scheme.
In deciding which governmental interest should prevail where there is a conflict between the zoning ordinance of the city and the statutory authority of the state to perform a designated public function, the better approach, in my opinion, involves judicial inquiry into the reasonableness of the state's action. Such a balance of interests approach would entail a consideration of a variety of relevant factors, including the type of facility or use intended by the state, the existing pattern of land use in the area, the effect of the activity on adjoining areas, public need for the facility, alternative locations for the facility, and alternative methods for providing the needed improvement. This approach would not result in total abrogation of state immunity, but rather would prevent the state from acting arbitrarily in undertaking violations of municipal zoning ordinances by subjecting its actions to judicial review.
Using this balance of interest test, we might well conclude in this case that the state's interests should prevail, and thus accord it exemption from the municipal zoning ordinance. However, because I am unwilling to say that such a result should obtain automatically in every instance of conflict, I dissent from the majority opinion.
NOTES
[1] LSA-Const. art. 6, § 9(B) (1974) corresponds to LSA-Const. art. 19, § 18 (1921).